COMMONWEALTH *vs.* ALVARO MURILLO.

No. 90-P-1086.

Norfolk. March 6, 1992. - April 3, 1992.

Present: KASS, SMITH, & FINE, JJ.

*Controlled Substances. Sale*, What constitutes. *Practice, Criminal*, Instructions to jury. *Statute*, Construction.

At the trial of an indictment charging the defendant with trafficking in more than 200 grams of cocaine in violation of G. L. c. 94C, § 32E(*b*) (4), the judge's refusal to instruct the jury to find the defendant not guilty if they believed he was acting in connection with the drug transaction solely as an agent of the buyer (the so-called "procuring agent instruction") was not improper. [381-382]

INDICTMENT found and returned in the Superior Court Department on September 29, 1988.

The case was tried before *Roger J. Donahue*, J.

*Paul F. Murphy* for the defendant.

*Elisabeth J. Medvedow*, Assistant Attorney General, for the Commonwealth.

FINE, J. Contending only that the jury instructions were improper, the defendant seeks reversal of his conviction of trafficking in more than 200 grams of cocaine in violation of G. L. c. 94C, § 32E(*b*)(4), as appearing in St. 1988, c. 124. In particular, the defendant contends that the jury should have been instructed to find him not guilty if they believed he was acting in connection with the drug transaction solely as an agent of the buyer. Relying on *Commonwealth* v. *Harvard*, 356 Mass. 452, 456-457 (1969), and a series of cases decided in New York, see, e.g., *People* v. *Roche*, 45 N.Y.2d 78 (1978), the defendant requested such a "procuring agent instruction" and objected to the judge's failure to give it. We conclude that the judge's refusal to give the in-

struction was not improper, and we, therefore, affirm the conviction.

We briefly summarize the Commonwealth's case, presented through three witnesses, Alberto Lagos Tragodera (Lagos) and two State troopers. Lagos, a convicted drug dealer, had been working as a paid undercover agent for Federal authorities and the State police. On a flight from South America in 1987, Lagos met the defendant, a Peruvian living at the time in Virginia. They struck up a conversation about drugs. The defendant provided Lagos with three telephone numbers, one of them at the home of a friend in Miami. In 1988, Lagos made contact with the defendant through the Miami number. They spoke on the telephone on numerous occasions thereafter, and the defendant paid several visits to Boston, all in connection with Lagos's interest in buying sizeable quantities of cocaine for resale. A price of $23,000 per kilogram was established. On each visit, Lagos met the defendant at the airport, arranged for the defendant's lodgings, and paid his expenses. As a result of the meetings, some cocaine and money exchanged hands. In the course of the defendant's final visit to Boston, which took place on September 19-20, 1988, the drug deal which resulted in the present indictment was partially consummated. The defendant brought Lagos to a particular room at the Holiday Inn in Brookline where one Jorge Caboverde was waiting with approximately five kilograms of cocaine. The cocaine was placed inside a suitcase. The defendant and Lagos left, the defendant carrying the suitcase. The defendant placed the suitcase in Lagos's car, and the two left for the defendant's motel, where the defendant was to await payment. The plan was for Caboverde to travel to Florida to get a second five-kilogram shipment once the first shipment had been paid for. Instead, the defendant and Caboverde were arrested at their respective motels.

The defendant testified and, although he admitted his involvement in the drug deal charged in the indictment, he provided a different version of the events. He claimed that Lagos was persistent in his efforts to involve the defendant in

drug transactions, but that he repeatedly expressed disinterest. The visits to Boston, he testified, were in connection with an offer from Lagos to hire him to work on some condominiums. The defendant admitted, however, that he was a cocaine user, that he knew as a result of a conversation with a contact of Lagos's in Miami that on September 19, 1988, the drugs were to be delivered at the Holiday Inn, that he provided the information to Lagos as to the particular room in which they would be delivered, that he accompanied Lagos to the Holiday Inn and carried the drugs in a suitcase from the motel room to Lagos's car, and that he expected to be paid $5,000 and some cocaine for his efforts in connection with the deal. He testified that, at Lagos's request, he had agreed to pose as the owner of the drugs when Lagos later sold them to his customers.

When a defendant is charged with selling narcotics and there is evidence that he acted in the transaction solely to assist the buyer in acquiring the narcotics, a procuring agent instruction may be appropriate. See *United States* v. *Sawyer*, 210 F.2d 169, 170 (3d Cir. 1954); *People* v. *Roche*, 45 N.Y.2d at 86. The rationale for requiring such an instruction is that, under a statutory scheme prohibiting the sale of narcotics, buyers are either not criminally liable or are subjected to a lesser penalty than sellers. *People* v. *Roche*, 45 N.Y.2d at 82-84. The procuring agent theory was recognized as a basis for overturning a conviction in one Massachusetts case, *Commonwealth* v. *Harvard*, 356 Mass. at 456-457, decided in 1969. The indictment in that case charged the sale of marihuana.

The statute the defendant is alleged to have violated in this case, first enacted in 1971 (St. 1971, c. 1071, § 1), is considerably broader in its sweep than the one involved in *Commonwealth* v. *Harvard* (G. L. c. 94, § 217, as appearing in St. 1960, c. 204, § 3, repealed by St. 1971, c. 1071, § 2). General Laws c. 94C, § 32E(*b*), among other things, prohibits possession with intent to distribute certain specified quantities of cocaine, and the indictment here so charged the defendant. In order to be convicted, a defendant must be found

to have acted knowingly and intelligently with respect to the transaction and with the specific intent that the cocaine be distributed. A buyer meeting those prerequisites falls within the statute's sweep. So too, one participating in the transaction as agent for a buyer of cocaine, if he meets those prerequisites, may be convicted of violating the statute. This is so even apart from the potential guilt of a buyer's agent under the trafficking statute on a joint enterprise theory. The jury in this case found the requisite knowledge and specific intent after receiving proper instructions on those issues as well as on joint venture principles.

In Federal prosecutions, the requirement of a procuring agent instruction, once recognized, has been abandoned because of the enactment of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801 et seq. (1988), which expanded the proscribed conduct to include not only the sale of narcotics, but also other acts including possession with intent to distribute. See *United States* v. *Snow*, 537 F.2d 1166, 1168-1169 (4th Cir. 1976). Similarly, we reject the requirement that the instruction be given in cases prosecuted under G. L. c. 94C, § 32E.

The line of cases from New York, on which the defendant relies, is not inconsistent with our conclusion. They were decided in the context of a statute prohibiting the sale of narcotics. See *People* v. *Roche*, 45 N.Y.2d at 81, 82, 86; *People* v. *Ortiz*, 76 N.Y.2d 446, 448-449 (1990); *People* v. *Walton*, 119 A.D.2d 889 (N.Y. 1986). Moreover, to our knowledge, the procuring agent instruction has never been considered appropriate when the defendant expected to profit from the deal. In the present case, the defendant admitted that he expected to be paid for his efforts in connection with the deal both in cash and in cocaine.

*Judgment affirmed.*