USCA1 Opinion

 

 November 22, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  _________________________ No. 93-1795 NAZZARO SCARPA, Petitioner, Appellee, v. LARRY E. DUBOIS, ETC., Respondent, Appellant.  __________________________ ERRATA SHEET ERRATA SHEET The opinion of the Court issued on October 18, 1994, is corrected as follows: On page 26, line 17, "449" should be "499" UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1795 NAZZARO SCARPA, Petitioner, Appellee, v. LARRY E. DUBOIS, ETC., Respondent, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ _________________________ William J. Duensing, Assistant Attorney General, with whom ____________________ Scott Harshbarger, Attorney General, was on brief, for appellant. _________________ Nazzaro Scarpa, pro se, orally and on original briefs, and ______________ ___ __ Seth M. Kalberg, by appointment of the court, orally and on _________________ supplemental brief, for appellee. _________________________ October 18, 1994 _________________________ SELYA, Circuit Judge. This appeal requires that we SELYA, Circuit Judge. _____________ address an important question, not authoritatively resolved by controlling precedent: When (if ever) does defense counsel's substandard performance in a criminal case never a pretty sight become so unattractive that a habeas court must forgo the customary inquiry into the harmful effects of attorney error and, instead, conclusively presume that counsel's blunders prejudiced the defendant? The question arises in the following context. Petitioner-appellee Nazzaro Scarpa brought a pro se application ___ __ for habeas corpus in the federal district court.1 See 28 U.S.C. ___ 2241-2254 (1988). He denominated a state correctional official, in his representative capacity, as the respondent. The district court discerned a Sixth Amendment violation: it concluded that Scarpa's trial counsel in the state court rendered grossly ineffective legal assistance to him, see Strickland v. ___ __________ Washington, 466 U.S. 668, 687 (1984) (elucidating applicable __________ test); see also Hill v. Lockhart, 474 U.S. 52, 57 (1985) ___ ____ ____ ________ (applying Strickland in the habeas context), and that counsel's __________ woeful performance gave rise to a per se presumption of ___ __ prejudice. The district court relied principally on dictum contained in United States v. Cronic, 466 U.S. 648 (1984), for _____________ ______ the proposition that it did not need to inquire into the  ____________________ 1On appeal, petitioner has also appeared pro se, preparing a ___ __ brief and arguing orally on his own behalf. To assist him, we appointed counsel who filed a supplemental brief and presented additional oral argument. 3 existence of actual prejudice. Respondent appeals. Although the district court's reading of Cronic finds some support in the case law, including ______ isolated cases decided by the Ninth and Tenth Circuits, see ___ United States v. Swanson, 943 F.2d 1070, 1073-74 (9th Cir. 1991); _____________ _______ Osborn v. Shillinger, 861 F.2d 612, 626 (10th Cir. 1988), we ______ __________ believe that Cronic is not nearly so wide-ranging as the district ______ court assumed. Hence, we reverse. I. BACKGROUND I. BACKGROUND We glean the essential facts from the transcript of petitioner's trial in Suffolk Superior Court. On June 10, 1987, Joseph Desmond, an agent of the federal Drug Enforcement Administration (DEA), posing as a would-be cocaine purchaser, met with his initial target, Robert Ricupero, at a pub in East Boston. At Ricupero's request, petitioner joined them. The trio discussed a possible cocaine purchase and then crossed the street to a parked limousine that bore the insignia of the "Snow White Limousine Service." Ricupero and Scarpa entered the vehicle. As Desmond later testified, Scarpa passed roughly 28 grams of cocaine to Ricupero, who handed it to Desmond in exchange for $1500 in cash. Ricupero kept $100 and gave the remainder to Scarpa. These events occurred under police surveillance. The next encounter between Desmond and his prey occurred on July 18, 1987. In preparation for it, the authorities again assigned a cadre of law enforcement officers to surveillance duties. Desmond and Ricupero met at the same pub. 4 At Ricupero's invitation, Scarpa again joined them. On this occasion, the actual exchange occurred in the deserted stairwell of a nearby apartment building, and a fourth man, James Marcella, entered the equation. Desmond testified that Marcella handed a package containing roughly 55 grams of cocaine to Scarpa, who passed the package to Ricupero. When Ricupero placed the drugs within Desmond's reach, Desmond handed him $3000. Ricupero slipped the money to Scarpa, who turned it over to Marcella. In due season, the Commonwealth indicted petitioner for drug trafficking and unlawful distribution. A jury convicted him on all charges after a four-day trial. The trial judge sentenced him to serve a lengthy prison term. Petitioner's motion for a new trial failed; the Massachusetts Appeals Court affirmed the conviction, see Commonwealth v. Scarpa, 30 Mass. App. Ct. 1106, ___ ____________ ______ 567 N.E.2d 1268 (1991) (table); and the Supreme Judicial Court (SJC) summarily denied petitioner's application for leave to obtain further appellate review (alofar), see Commonwealth v. ___ ____________ Scarpa, 409 Mass. 1105, 571 N.E.2d 28 (1991). ______ Undaunted, Scarpa filed an application for a writ of habeas corpus in federal district court. After hearing arguments presented by Scarpa and by the Commonwealth, the district court granted the petition. It found that defense counsel's performance not only fell below an objectively reasonable standard of proficiency but also caused a breakdown in the adversarial system. This, the district judge thought, constituted prejudice per se. Accordingly, he vacated the ___ __ 5 conviction, ordered petitioner released from state custody, and directed the Commonwealth to retry him if it sought to exact further punishment. The court refused respondent's application for a stay, and petitioner is at liberty. II. EXHAUSTION OF REMEDIES II. EXHAUSTION OF REMEDIES The Commonwealth is the real party in interest in these proceedings, and we treat the case as if it were the named respondent. At the outset, the Commonwealth seeks to sidestep habeas relief by convincing us that petitioner failed to present his constitutional claim to the state courts before bolting to a federal forum. We are not persuaded. A. Governing Principles. A. Governing Principles. ____________________ Under our federal system, both the federal and state courts are entrusted with the protection of constitutional rights. See Ex parte Royall, 117 U.S. 241, 251 (1886). In order ___ _______________ to ease potential friction between these two sovereigns, a federal court will ordinarily defer action on a cause properly within its jurisdiction until the courts of another sovereign with concurrent powers, already cognizant of the litigation, have had an opportunity to pass upon the matter. See Rose v. Lundy, ___ ____ _____ 455 U.S. 509, 518 (1982). This practice, reflecting concerns of comity, has been codified in 28 U.S.C. 2254,2 and memorialized  ____________________ 2The statute provides in pertinent part: * * * (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court 6 in our case law, see, e.g., Mele v. Fitchburg Dist. Court, 850 ___ ____ ____ _____________________ F.2d 817, 819 (1st Cir. 1988). In order to present a federal claim to the state courts in a manner sufficient to satisfy exhaustion concerns, a petitioner must inform the state court of both the factual and legal underpinnings of the claim. See Picard v. Conner, 404 U.S. ___ ______ ______ 270, 276-78 (1971). The test is substantive: was the claim presented in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question? See Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. ___ ________ ____ 1989). While the answer to the question must not be made to depend on "ritualistic formality," id. at 1097, neither is the ___ answer wholly in the eye of the beholder. In Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987), we _____ ____ catalogued four ways in which the requirement of fair presentment may be fulfilled: "1) citing a specific provision of the Constitution; 2) presenting the substance of a federal  ____________________ shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. 28 U.S.C. 2254(b), (c) (1988). 7 constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; 3) reliance on federal constitutional precedents; and 4) claiming a particular right specifically guaranteed by the Constitution." We did not, however, attribute exclusivity to this compendium. In Nadworny, ________ 872 F.2d at 1099-1100, we mentioned a fifth possibility, namely, the assertion of a state law claim that is functionally identical to a federal claim. These possibilities recognize that certain constitutional violations have the capacity to rest on a variety of factual bases. While the facts and legal theories need not be propounded in precisely the same terms, fair presentation requires that the constitutional analysis necessary to resolve the ultimate question posed in the habeas petition and in the state court proceedings, respectively, be substantially the same. See Lanigan v. Maloney, 853 F.2d 40, 44-45 (1st Cir. 1988), cert. ___ _______ _______ _____ denied, 488 U.S. 1007 (1989). ______ B. Analysis. B. Analysis. ________ Here, petitioner's odyssey through the Massachusetts court system involved a trial, a motion for a new trial, a full- dress appeal in the state appeals court, and an alofar. At all three post-trial stages, petitioner raised claims anent counsel's proficiency (or, more precisely put, counsel's lack of proficiency) and couched his claim in terms that remained largely unchanged. In his pleadings and memoranda at all three stages, petitioner alleged three principal shortcomings on counsel's part: a failure to attack the prosecution's star witness; a 8 mindless solicitation to the jury to believe that star witness; and the ill-advised pursuit of a defense, not legally cognizable, that virtually conceded the elements of the charged offenses. Throughout the appellate process, petitioner described his claim as "ineffective assistance of counsel." Moreover, at the first two stages he cited three state cases, Commonwealth v. Pope, 467 N.E.2d 117 (Mass. 1984); ____________ ____ Commonwealth v. Satterfield, 364 N.E.2d 1260 (Mass. 1977); ____________ ___________ Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974), that dealt ____________ ________ squarely with this issue.3 In his motion for new trial, petitioner cited the Sixth Amendment by name, accompanying the motion with the affidavit of his trial counsel, Arthur Tacelli, attesting to Tacelli's self-professed ineffectiveness. Scarpa's federal habeas petition again asserted "ineffective assistance of counsel," and cited the same three factual bases in support of the assertion. On these facts, we agree with the district judge that the arguments presented by petitioner sufficiently alerted the state courts to the substance of the constitutional claim. In the first place, an argument phrased as "ineffective assistance of counsel" certainly "claim[s] a particular right specifically  ____________________ 3The Commonwealth makes much of the fact that these cases were not cited in the alofar, and insists that Mele, 850 F.2d at ____ 823, requires a federal court to restrict the exhaustion inquiry to that document. This crabbed reading of Mele wrenches the case ____ out of its context. There, the defendant raised his constitutional issue before the intermediate appellate court, abandoned it in his alofar, and then attempted to raise it anew in his habeas petition. See id. at 818-19. In contrast, Scarpa ___ ___ has consistently asserted his ineffective assistance claim. 9 guaranteed by the Constitution." Gagne, 835 F.2d at 7. In the _____ second place, by identifying the Sixth Amendment in his motion for a new trial, petitioner "cite[s] a specific provision of the Constitution," id., and, at the same time, provided a backdrop ___ against which his later filings had to be viewed. If any doubt remains, the sockdolager is that, as a general rule, presenting a state-law claim that is functionally identical to a federal-law claim suffices to effectuate fair presentment of the latter claim. See Nadworny, 872 F.2d at 1099- ___ ________ 1100. So it is here: petitioner brought himself within the encincture of this rule by his repeated citation to the trio of Massachusetts cases that we have mentioned cases that evaluate the effectiveness of an attorney's performance in terms reminiscent of the federal constitutional standard. As in Strickland, 466 U.S. 668, the Massachusetts cases call for a __________ deferential evaluation of counsel's performance, and, if the performance is found to be substandard, an inquiry into whether counsel's incompetence injured the defendant's substantial rights. See Pope, 467 N.E.2d at 122-123; Satterfield, 364 N.E.2d ___ ____ ___________ at 1264; Saferian, 315 N.E.2d at 882-83.4 ________  ____________________ 4The SJC has made clear that it ordinarily considers questions involving "assistance of counsel" as coming "within the __________ meaning of the Sixth Amendment." Saferian, 315 N.E.2d at 882 _______________________________ ________ (emphasis supplied). A defendant must show that there has been serious incompetency, inefficiency, or inattention of counsel behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer and, if that is found, then, typically, whether it has likely 10 Despite minor differences in phraseology, the two standards state and federal strike us as equivalent. Indeed, the Commonwealth does not contend that a claim of ineffective assistance of counsel arising under Massachusetts law differs from such a claim arising out of the Sixth Amendment. We readily appreciate why this contention is not voiced. The essence of each inquiry looks to the likelihood that effective assistance of counsel would have produced a different trial outcome. The SJC itself, while leaving open the theoretical possibility that there might be some difference between the state and federal standards, has concluded that if their state's test is satisfied, "the Federal test is necessarily met as well." Commonwealth v. ____________ Fuller, 475 N.E.2d 381, 385 n.3 (Mass. 1985). Finally, we deem ______ it highly relevant that the SJC has continued to apply the Saferian analysis to ineffective assistance of counsel claims in ________ the post-Strickland era. See, e.g., Commonwealth v. Charles, 489 __________ ___ ____ ____________ _______  ____________________ deprived the defendant of an otherwise available, substantial ground of defence. Id. at 883. This is functionally identical to the federal ___ standard, which calls for a defendant to show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687. __________ 11 N.E.2d 679, 688 (Mass. 1986); Commonwealth v. Licata, 591 N.E.2d ____________ ______ 672, 676 (Mass. 1992). To be sure, petitioner failed to cite directly to federal precedent in his journey through the state appellate process. In our view, however, this omission is not fatal. Although such citation is strongly recommended if only to avoid controversies of this nature, we have specifically declined to adopt a bright-line rule. See Nadworny, 872 F.2d at 1101 & n.4. ___ ________ The guidelines we have promulgated in respect to exhaustion are intended to be instructive, rather than to comprise the sole corridors through which the "actual embodiment of fair presentation" may pass. Id. at 1097. ___ To say more would be supererogatory. For the reasons stated above, we conclude that petitioner's Sixth Amendment claim was put to the state courts with the requisite clarity. See ___ Twitty v. Smith, 614 F.2d 325, 332 (2d Cir. 1979) (finding a ______ _____ similar claim exhausted, under analogous circumstances, because "the mention of `effective assistance of counsel' instantly calls to mind the Sixth Amendment's guaranty of the accused's right `to have the Assistance of Counsel for his defence'") (citations omitted); see also Daye v. Attorney General, 696 F.2d 186, 193 ___ ____ ____ ________________ (2d Cir. 1982) (en banc) (reaffirming Twitty holding); Brady v. ______ _____ Ponte, 705 F. Supp. 52, 54 (D. Mass. 1988) (stating that explicit _____ reference to "ineffective assistance of counsel" suffices to exhaust a Sixth Amendment claim) (dictum). III. THE MERITS III. THE MERITS 12 We segment our consideration of the merits, first outlining certain legal principles of general applicability, then essaying an overview of petitioner's trial, and thereafter synthesizing the fruits of these endeavors by applying the relevant principles to the relevant circumstances. A. Governing Principles. A. Governing Principles. ____________________ The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. See Strickland, 466 ___ __________ U.S. at 687. The touchstone for determining whether an attorney's performance falls below the constitutional norm is whether counsel has brought "to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Id. at 688. The inquiry has two foci. First, a reviewing court ___ must assess the proficiency of counsel's performance under prevailing professional norms. See United States v. Natanel, 938 ___ _____________ _______ F.2d 302, 310 (1st Cir. 1991), cert. denied, 112 S. Ct. 986 _____ ______ (1992). This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense. See, e.g., Lema v. United States, 987 F.2d 48, 51 (1st ___ ____ ____ _____________ Cir. 1993); Natanel, 938 F.2d at 309. And, moreover, since even _______ the most celebrated lawyers can differ over trial tactics in a particular case, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at __________ 689. 13 The second line of inquiry is needed because, in itself, dreary lawyering does not offend the Constitution. Rather, a finding that counsel failed to meet the performance standard merely serves to advance the focus of the Strickland __________ inquiry to the question of whether the accused suffered prejudice in consequence of counsel's blunders. See id. at 692. This ___ ___ entails a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A defendant who alleges ___ ineffective assistance of counsel must carry the devoir of persuasion on both tiers of the Strickland test. See, e.g., __________ ___ ____ Lema, 987 F.2d at 51. The same holds true of a habeas petitioner ____ who claims that counsel mishandled his case in the state courts. See Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984). ___ ______ ______ An inquiry into the effectiveness of counsel is almost always a mixed question of law and fact. See Strickland, 466 ___ __________ U.S. at 698. In federal courts, mixed questions of law and fact arising in section 2254 cases are ordinarily subject to de novo __ ____ review. See Chakouian v. Moran, 975 F.2d 931, 934 (1st Cir. ___ _________ _____ 1992). This includes claims premised on ineffective assistance of counsel. See, e.g., McAleese v. Mazulkiewcz, 1 F.3d 159, 165 ___ ____ ________ ___________ (3d Cir. 1993); Fields v. Attorney General, 956 F.2d 1290, 1297 ______ ________________ n.18 (4th Cir.), cert. denied, 113 S. Ct. 243 (1992). _____ ______ Comfortable with this precedent, and mindful that the district court's "prejudice per se" ruling derives from a conception of ___ __ law rather than from a finding of fact, we apply a de novo __ ____ 14 standard of review here.5 B. The State Court Trial. B. The State Court Trial. _____________________ In the superior court, the prosecution conveyed its case principally through two witnesses. Desmond supplied detailed, firsthand testimony anent the cocaine sales and a Boston police detective, Joseph Mugnano, testified that Scarpa admitted owning the Snow White Limousine Service. Scarpa's defense counsel did not attempt to impeach Desmond, but, rather, rehashed the direct examination, extracting from Desmond the following facts: that Ricupero, not Scarpa, was the primary target of the DEA's investigation; that Ricupero initially indicated to Desmond that his repository for drugs was a pickup truck, not a limousine; that, with respect to the first transaction, (1) Desmond did not know who put the cocaine in the limousine, and (2) someone other than Scarpa actually handed the  ____________________ 5Some courts have suggested that a standard of independent review which we have described in a different context as "an intermediate level of scrutiny, more rigorous than the abuse of discretion or clear-error standards, but stopping short of plenary or de novo review," United States v. Tortora, 922 F.2d __ ____ _____________ _______ 880, 883 (1st Cir. 1990) applies in habeas cases. See, e.g., ___ ____ Battle v. Dell, 19 F.3d 1547, 1552 (8th Cir. 1994); Hamilton v. ______ ____ ________ Ford, 969 F.2d 1006, 1010 (11th Cir. 1992), cert. denied, 113 S. ____ _____ ______ Ct. 1625 (1993); see also S. Childress & M. Davis, Federal ___ ____ _______ Standards of Review 13.05, at 13-37 (1992). We are satisfied ___________________ that de novo review is appropriate in the case at bar, and we __ ____ need not decide today whether a standard of independent review should ever be employed in habeas cases. Withal, it strikes us that where, as here, the district judge does not himself take any evidence, the gap between independent review and de novo review, __ ____ if one exists at all, is necessarily very small. Cf. Tortora, ___ _______ 922 F.2d at 883 (explaining that lesser deference is warranted when district court essays no "new or different factfinding," but, instead, acts on the basis of a magistrate's findings and report). 15 drugs to Desmond; that, with respect to the second transaction, (1) Scarpa was a middle link in the chain of drugs and cash, and (2) Desmond did not know whether Scarpa received any money referable to that transaction. Attorney Tacelli declined to question Mugnano and produced no witnesses in Scarpa's defense. His closing argument consisted of a terse explanation of the concept of reasonable doubt and a solicitation to the jury to accept the government's testimony: So, I'm asking you, as finders of fact, to believe Detective Mugnano, because his testimony, I suggest, is innocuous. The second witness that the Government and the prime witness that the Government produced in support of their argument that Mr. Scarpa was guilty of cocaine trafficking and distribution, was Agent Desmond . . . And you listen to DEA Agent Drug Enforcement Agent Desmond. And I ask you: What motive would that man have to come into a superior court courtroom, with a varied jury, a superior court judge, what motive would he have for lying? What motive would he have to tell an untruth? What motive would he have to color the fact situation as he remembered it? And I suggest to you and I hope you _______________________________________ find resoundingly that he has no motive but _____________________________________________ that of following the truth. . . . [I]'m _____________________________ asking you to find that man a credible human being; a man who came in, took the oath and told the truth [emphasis supplied]. Speaking of Scarpa, Attorney Tacelli continued: Was he a user of cocaine? Was he a dupe? What happened to that money? What was its final destination? Is Scarpa a user of drugs? Is Scarpa someone that Ricupero, the target of the investigation is Scarpa was he used by Ricupero to shield himself? . . . And I'm suggesting to you again, at the expense of being repetitious, Scarpa is not found and it is undetermined that is the word that Agent Desmond used on July 8th it's undetermined if Scarpa had any of that 16 money. . . . And clearly, the source of the cocaine on the 8th was not Scarpa. At best ________ he was a conduit; someone through whom it _____________________________________________ passed, and through whom the money passed _____________________________________________ [emphasis supplied]. During summation, the prosecutor agreed that Desmond had no reason to lie. He told the jury that the Commonwealth had no obligation to prove either the source of the cocaine or the ultimate destination of the money. And he labelled defense counsel's closing argument "a smokescreen." In due course, the judge instructed the jury on the elements of the trafficking offense. He told the jurors, in substance, that to convict, they must find that the defendant (1) knowingly (2) possessed cocaine; (3) with the intent to distribute it; and (4) that the quantity of cocaine must be in excess of 28 grams. See Mass. Gen. Laws ch. 94C, 32E(b) ___ (1992). The judge instructed the jurors to much the same effect in regard to the distribution charge, but substituted distribution for possession and eliminated any reference to a minimum quantity of cocaine. See id. 32A(a). The judge also ___ ___ informed the jury that the identity of "the kingpin" did not bear upon the charges at hand. The jury convicted Scarpa on both counts. C. The Attorney's Performance. C. The Attorney's Performance. __________________________ The district court deemed defense counsel's argument as tantamount to arguing that petitioner was a "mere conduit" for the contraband. Believing that this approach effectively conceded the only disputed elements of the charged crimes and 17 relieved the prosecution of its burden of proof, the court found Attorney Tacelli's use of it to be objectively unreasonable, and therefore, substandard. We uphold this finding. At the least, defense counsel in a criminal case should understand the elements of the offenses with which his client is charged and should display some appreciation of the recognized defenses thereto. See Young v. ___ _____ Zant, 677 F.2d 792, 798 (11th Cir. 1982) (explaining that defense ____ counsel falls below performance standard by failing to understand his client's factual claims or the legal significance of those claims); Baty v. Balkcom, 661 F.2d 391, 394-95 (5th Cir. 1981) ____ _______ (holding that defense counsel's unfamiliarity with his client's case transgressed performance standard), cert. denied, 456 U.S. _____ ______ 1011 (1982). Unless counsel brings these rudiments to the table, a defendant likely will be deprived of a fair "opportunity to meet the case of the prosecution," Strickland, 466 U.S. at 685 __________ (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, _____ _____________________________ 275, 276 (1942)), and, thus, will be placed at undue risk of having no effective advocate for his cause. Phrased another way, if an attorney does not grasp the basics of the charges and the potential defenses to them, an accused may well be stripped of the very means that are essential to subject the prosecution's case to adversarial testing. See id. at 688. ___ ___ We agree with the district court that this is such a case. Defense counsel's pursuit of his half-baked theory evidenced a blatant misunderstanding of the charged crimes. 18 Being a "conduit" denotes acting as an agent or intermediary. Persons who knowingly serve as agents or intermediaries in narcotics transactions are punishable as principals under Massachusetts law. See Commonwealth v. Murillo, 589 N.E.2d 340, ___ ____________ _______ 342 (Mass.), rev. denied, 575 N.E.2d 326 (1992); Commonwealth v. ____ ______ ____________ Poole, 563 N.E.2d 253, 255 (Mass. 1990). Thus, the line of _____ defense that counsel selected was altogether irrelevant to petitioner's guilt or innocence; and, to compound the problem, the steps taken in pursuit of it such as urging the jury to accept Desmond's testimony played into the prosecution's hands. Serious errors in an attorney's performance, unrelated to tactical choices or to some plausible strategic aim, constitute substandard performance. See United States v. Weston, 708 F.2d ___ ______________ ______ 302, 306 (7th Cir.) (examining only those errors not reasonably classifiable as tactical choices to determine the existence of grossly unprofessional conduct), cert. denied, 464 U.S. 962 _____ ______ (1983); see also Francis v. Spraggins, 720 F.2d 1190, 1194 (11th ___ ____ _______ _________ Cir. 1983) (stating that "complete concession of the defendant's guilt" may constitute ineffective assistance), cert. denied, 470 _____ ______ U.S. 1059 (1988); cf. United States v. Tabares, 951 F.2d 405, 409 ___ _____________ _______ (1st Cir. 1991) (finding no ineffective assistance when counsel's concession is strategic); Underwood v. Clark, 939 F.2d 473, 474 _________ _____ (7th Cir. 1991) (similar). This verity has particular force where, as here, counsel's blunders not only failed to assist in fashioning a defense but also cemented the prosecution's theory of the case. There are times when even the most adroit advocate 19 cannot extricate a criminal defendant from a pit; but when counsel, to no apparent end, digs the hole deeper, the Sixth Amendment performance standard is likely implicated. The Commonwealth's rejoinder is lame. First, it contends that Attorney Tacelli rendered constitutionally effective assistance because the conduit defense is a "common defense which raises issues considered good strategy." This is no more than an ipse dixit, unsupported by authority. To be ____ _____ sure, the Commonwealth cites a quadrat of cases in a conspicuously unsuccessful effort to bolster this claim but none of them is persuasive on the point. Two of these cases stand for the unremarkable proposition that "mere presence" is not enough to convict in a narcotics case, in the absence of other evidence. See Commonwealth v. Cruz, 614 N.E.2d 702, 704 ___ ____________ ____ (Mass. 1993); Commonwealth v. Brown, 609 N.E.2d 100, 103 (Mass. ____________ _____ 1993); see also United States v. Ortiz, 966 F.2d 707, 711-12 (1st ___ ____ _____________ _____ Cir. 1992) (explaining difference between "mere presence" and "culpable presence" in drug-trafficking cases), cert. denied, 113 _____ ______ S. Ct. 1005 (1993). The other two cases are easily distinguishable on the facts. See Commonwealth v. Johnson, 602 ___ ____________ _______ N.E.2d 555, 559 & n.8 (Mass. 1992); Commonwealth v. Claudio, 525 ____________ _______ N.E.2d 449, 451-52 (Mass. 1988). Second, respondent attempts to cast Attorney Tacelli's pratfalls as an argument for jury nullification. This is pure conjecture. The record contains no indication that counsel strove to implant the notion of nullification in the jurors' 20 minds. In any event, "although jurors possess the raw power to set the accused free for any reason or for no reason, their duty is to apply the law as given to them by the court." United ______ States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993), cert. ______ _________ _____ denied, 114 S. Ct. 2714 (1994); see also Commonwealth v. Leno, ______ ___ ____ ____________ ____ 616 N.E.2d 453, 457 (1993) ("We do not accept the premise that jurors have the right to nullify the law on which they are instructed . . . ."). Consequently, defense counsel may not press arguments for jury nullification in criminal cases, see ___ Sepulveda, 15 F.3d at 1190; United States v. Desmarais, 938 F.2d _________ _____________ _________ 347, 350 (1st Cir. 1991); Leno, 616 N.E.2d at 457, and we will ____ not permit the Commonwealth to pretend that it sat idly by and allowed Attorney Tacelli to violate this rule. D. Prejudice. D. Prejudice. _________ Having found substandard performance, we come next to the second prong of the Strickland inquiry. The district court, __________ while acknowledging that Scarpa's plight was "well nigh hopeless," bypassed a case-specific inquiry into prejudice, instead finding prejudice per se on the theory that counsel was ___ __ so derelict in his duty that petitioner, in effect, had no counsel at all. We reject the application of a per se standard ___ __ to this case. Moreover, after conducting the full Strickland __________ analysis in the appropriate way, we find that petitioner suffered no actual prejudice. 1. 1. As mentioned above, the district court relied primarily 21 on dictum contained in United States v. Cronic, 466 U.S. at 658- _____________ ______ 60, for the proposition that, in the circumstances at bar, it could forgo an inquiry into actual prejudice. The Cronic Court ______ stated that in rare instances prejudice might be presumed "without inquiry into counsel's actual performance at trial." Id. at 662 (dictum). But, the approach suggested in this ___ statement is in all events the exception, not the rule and it can be employed only if the record reveals presumptively prejudicial circumstances such as an outright denial of counsel, a denial of the right to effective cross-examination, or a complete failure to subject the prosecution's case to adversarial testing.6 See id. at 659. The Cronic Court itself warned that, ___ ___ ______ in most cases, a showing of actual prejudice remained a necessary element. See id. The Court stated: "there is generally no ___ ___ basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." Id. at 659 n.26. ___ For the most part, courts have been cautious in invoking the exception limned in the Cronic dictum. Cronic like ______ ______ principles have been applied, for example, in situations in which  ____________________ 6The facts of Cronic illustrate the narrowness of the ______ exception. In that case, the defendant was charged in a complicated check-kiting scheme. The government had spent over four years investigating the case, but when the defendant's counsel withdrew, the trial court appointed a young real estate lawyer only 25 days before trial. The Supreme Court held that this brief period for preparation was "not so short that it even arguably justifies a presumption that no lawyer could provide the [defendant] with the effective assistance of counsel required by the Constitution." 466 U.S. at 665. 22 defense counsel labored under an actual conflict of interest, see ___ Cuyler v. Sullivan, 446 U.S. 335 (1980), or in which no attorney ______ ________ appeared despite a defendant's unwaived right to appointed counsel, see United States v. Mateo, 950 F.2d 44, 48-50 (1st Cir. ___ _____________ _____ 1991), or in which defendant's lawyer sat in total silence throughout the relevant proceeding, see Tucker v. Day, 969 F.2d ___ ______ ___ 155, 159 (5th Cir. 1992) (involving resentencing); Harding v. _______ Davis, 878 F.2d 1341, 1345 (11th Cir. 1989) (holding that defense _____ counsel's muteness throughout trial, including his utter silence as the judge directed a verdict against his client, is per se ___ __ prejudicial), or in which the defense attorney was absent from the courtroom during a critical part of the trial, see Green v. ___ _____ Arn, 809 F.2d 1257, 1259-64 (6th Cir.), cert. granted, vacated ___ _______________________ and remanded to consider mootness, 484 U.S. 806 (1987); Siverson _________________________________ ________ v. O'Leary, 764 F.2d 1208, 1217 (7th Cir. 1985), or, pre-Cronic, _______ ______ in which counsel snoozed through much of the proceedings, see ___ Javor v. United States, 724 F.2d 831, 833 (9th Cir. 1984). _____ _____________ A few courts have extended the exception's boundaries beyond the circumstances surrounding representation and found that a lawyer's particular errors at trial may cause a breakdown in the adversarial system and thus justify invocation of the Cronic dictum. See Swanson, 943 F.2d at 1074 (holding that ______ ___ _______ knowingly and explicitly conceding reasonable doubt in closing argument is per se prejudicial); Osborn, 861 F.2d at 628-29 ___ __ ______ (finding per se prejudice when defense counsel intentionally ___ __ stressed the brutality of his client's crime, admitted that the 23 evidence against his client was overwhelming, and made statements to the press that his client had no evidence to support his claims). We believe that these cases misperceive the rationale underlying the Cronic exception. In our view, the Court's ______ language in Cronic was driven by the recognition that certain ______ types of conduct are in general so antithetic to effective __ _______ assistance for example, lawyers who leave the courtroom for long stretches of time during trial are unlikely to be stellar advocates in any matter that a case-by-case analysis simply is not worth the cost of protracted litigation. No matter what the facts of a given case may be, this sort of conduct will almost always result in prejudice. See Cronic, 466 U.S. at 658-59. But ___ ______ attorney errors particular to the facts of an individual case are qualitatively different. Virtually by definition, such errors "cannot be classified according to likelihood of causing prejudice" or "defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid." Strickland, 466 U.S. at 693. Consequently, the Court has __________ declined to accord presumptively prejudicial status to them. See ___ id. ___ We are not alone in our attempt to harmonize Cronic ______ with Strickland by drawing an easily visible line separating __________ those few cases in which prejudice may be presumed from the mine- run (in which actual prejudice must be shown). When confronted by particular errors on the part of defense counsel, best evaluated in the context of the defendant's trial, other federal 24 courts have refused to march under the Cronic banner, and, ______ instead, notwithstanding the seriousness of the errors, have performed both parts of the requisite Strickland analysis. Thus, in McInerny v. Puckett, 919 F.2d 350 (5th Cir. 1990), the ________ _______ defendant claimed that his lawyer's lack of preparedness and failure to raise an insanity defense justified the invocation of the Cronic dictum. See id. at 352-53. In requiring a showing of ______ ___ ___ prejudice, the Fifth Circuit noted that "bad lawyering, regardless of how bad, does not support the [per se] presumption; ___ ___ __ more is required." Id. at 353; see also United States v. ___ ___ ____ _____________ Thompson, 27 F.3d 671, 676 (D.C. Cir. 1994) (finding no prejudice ________ per se in defense counsel's failure to inform defendant before ___ __ guilty plea that, as a career offender, he faced possible life imprisonment); United States v. Baldwin, 987 F.2d 1432, 1437-38 ______________ _______ (9th Cir.) (finding no prejudice per se where attorney conceded ___ __ his client's guilt at pretrial conference and neglected to request jury instruction on overt act requirement for conspiracy charge), cert. denied, 113 S. Ct. 2948 (1993); Woodard v. _____ ______ _______ Collins, 898 F.2d 1027, 1028 (5th Cir. 1990) (requiring showing _______ of prejudice where defense counsel advised the accused to plead guilty to a charge that counsel had not investigated); United ______ States v. Reiter, 897 F.2d 639, 644-45 (2d Cir.) (applying full ______ ______ Strickland standard in spite of defendant's claim that counsel's __________ errors were so pervasive as to amount to "no counsel at all"), cert. denied, 498 U.S. 990 (1990); Green v.Lynaugh, 868 F.2d 176, _____ ______ _____ _______ 177-78 (5th Cir.) (applying full Strickland analysis to __________ 25 attorney's decision to conduct "almost no investigation"), cert. _____ denied, 493 U.S. 831 (1989); Henderson v. Thieret, 859 F.2d 492, ______ _________ _______ 499 (7th Cir. 1988) (applying second prong of Strickland to __________ attorney's lack of preparation in connection with sentencing), cert. denied, 490 U.S. 1009 (1989); Gardner v. Ponte, 817 F.2d _____ ______ _______ _____ 183, 186-87 (1st Cir.) (refusing to extend Cronic to attorney's ______ failure to object to jury instructions), cert. denied, 484 U.S. _____ ______ 863 (1987); State v. Savage, 577 A.2d 455, 466 (N.J. 1990) _____ ______ (finding no prejudice per se in a capital case where counsel only ___ __ met once with defendant). Similarly, in reviewing claims of ineffective assistance of counsel at the appellate level, courts have declined to apply Cronic to attorney errors that do not ______ amount to the constructive absence of counsel. See, e.g., ___ ____ Hollenback v. United States, 987 F.2d 1272, 1276 & n.1 (7th Cir. __________ _____________ 1993) (finding no per se prejudice in appellate counsel's ___ __ citation to wrong provision of money-laundering statute); United ______ States v. Birtle, 792 F.2d 846, 847-48 (9th Cir. 1986) (finding ______ ______ no per se prejudice when defendant's appellate counsel failed to ___ __ appear at oral argument or file a reply brief).7  ____________________ 7Of course, courts have not required a showing of prejudice when the attorney's inadequate performance completely denies the defendant his right to an appeal. See, e.g., Bonneau v. United ___ ____ _______ ______ States, 961 F.2d 17, 23 (1st Cir. 1992) (requiring no showing of ______ prejudice when the defendant's appeal was dismissed due to his lawyer's failure to file a brief); United States ex rel. Thomas _____________________________ v. O'Leary, 856 F.2d 1011, 1016-17 (7th Cir. 1988) (finding _______ prejudice per se when defense counsel filed no brief during ___ __ state's appeal of a suppression order and the ensuing decision was thus based only on the record and the government's brief); Williams v. Lockhart, 849 F.2d 1134, 1137 n.3 (8th Cir. 1988) ________ ________ (finding prejudice per se in attorney's failure to bring appeal ___ __ after promising to do so). 26 These authorities suggest that attorney error, even when egregious, will almost always require analysis under Strickland's prejudice prong. We agree. Thus, we decline to __________ adopt the expanded version of Cronic embraced by the district ______ court. Our reasons are manifold, but four of them are paramount. First, we do not think that the Court intended such an expansion to occur. Second, once it is necessary to examine the trial record in order to evaluate counsel's particular errors, resort to a per se presumption is no longer justified by the wish ___ __ to avoid the cost of case-by-case litigation. An overly generous reading of Cronic would do little more than replace case-by-case ______ litigation over prejudice with case-by-case litigation over prejudice per se. ___ __ Third, in our judgment the proper approach to the intended reach of the Cronic dictum is informed by the ______ refinements of the harmless-error doctrine contained in a battery of recent Supreme Court cases. Some constitutional errors, denominated "trial errors," will not result in reversal of a conviction if they are shown to be harmless. See Brecht v. ___ ______  ____________________ The counterpoint, however, is that in deciding whether to require a showing of prejudice for inadequate legal assistance on appeal, courts have traced a line, analogous to the one we draw today, distinguishing between inept performance and no performance. See, e.g., Penson v. Ohio, 488 U.S. 75, 88 (1988) ___ ____ ______ ____ (requiring no showing of prejudice when defendant's lawyer withdrew without filing a brief on appeal, and distinguishing this situation from "a case in which counsel fails to press a particular argument on appeal or fails to argue an issue as effectively as he or she might") (citation omitted); Bonneau, 961 _______ F.2d at 23 (requiring no showing of prejudice but distinguishing its facts from "a case of sloppy briefing that missed some vital issues" or a case of "inadequate oral argument"). 27 Abrahamson, 113 S. Ct. 1710, 1722 (1993); Arizona v. Fulminante, __________ _______ __________ 499 U.S. 279, 306-08 (1991). Examples of such trial errors include overbroad jury instructions used during the sentencing stage of a capital case, see Clemons v. Mississippi, 494 U.S. ___ _______ ___________ 738, 752 (1990); jury instructions containing an erroneous (but rebuttable) presumption, see Carella v. California, 491 U.S. 263, ___ _______ __________ 266-67 (1989); and improper prosecutorial comment on the defendant's silence, see United States v. Hasting, 461 U.S. 499, ___ _____________ _______ 509 (1983). However, other more fundamental errors, denominated "structural errors," jar the framework in which the trial proceeds and, accordingly, are said to "defy analysis by `harmless-error' standards," Brecht, 113 S. Ct. at 1717 (quoting ______ Fulminante, 499 U.S. at 309), and, thus necessitate "automatic __________ reversal of [a] conviction because they infect the entire trial process," id. In effect, then, the harmfulness of structural ___ errors can be conclusively presumed. Examples of structural errors, in addition to total deprivation of the right to counsel, see Gideon v. Wainwright, 372 U.S. 335 (1963), include failing to ___ ______ __________ give a constitutionally sufficient "reasonable doubt" instruction, see Sullivan v. Louisiana, 113 S. Ct. 2078, 2081-82 ___ ________ _________ (1993); permitting a trial to proceed before a biased adjudicator, see Tumey v. Ohio, 273 U.S. 510, 535 (1927); and ___ _____ ____ discriminatorily excluding members of a defendant's race from a grand jury, see Vasquez v. Hillery, 474 U.S. 254, 260-62 (1986), ___ _______ _______ or a petit jury, see Batson v. Kentucky, 476 U.S. 79, 100 (1986). ___ ______ ________ The "common thread" connecting the numerous examples of trial 28 error listed by Chief Justice Rehnquist in Fulminante is that all __________ such errors occur "during the presentation of the case to the jury," and therefore may "be quantitatively assessed in the context of [the] evidence presented" in order to gauge harmlessness. Fulminante, 499 U.S. at 307-08. __________ We are confident that what transpired in this case bears a much stronger resemblance to trial error than to structural error. Like the line separating trial errors from structural errors, the line past which prejudice will be presumed in cases involving claims of ineffective assistance ought to be plotted to exclude cases in which a detailed contextual analysis is required. Drawing the line in this way is especially fitting, we suggest, because like the harmless-error doctrine, the prejudice prong of Strickland helps to promote the salutary tenet __________ that "the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promote[] public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." Delaware v. Van ________ ___ Arsdall, 475 U.S. 673, 681 (1986) (citation omitted). _______ Our fourth and final reason for taking a somewhat narrow view of the Cronic dictum is closely related to the ______ concerns that the Court has expressed in the harmless-error cases. In addition to comity and federalism concerns, the state has an important interest in the finality of its jury verdicts and in keeping behind bars criminals who have been fairly tried 29 and justly convicted. Forcing a state to retry its criminals imposes social costs, including the expenditure of time and resources for all concerned; the dispersal of witnesses and the erosion of witnesses' memories; and the occurrence of sundry other events that make obtaining a conviction more difficult on retrial. See Brecht, 113 S. Ct. at 1720-21; cf. Barker v. Wingo, ___ ______ ___ ______ _____ 407 U.S. 514, 522 n.16 (1972) (admonishing that the public has an "interest in trying people accused of crime, rather than granting them immunization because of legal error") (citation omitted). For this reason, federal courts should not rush to overturn the state-court conviction of a defendant who, although represented by mistake-prone counsel, is unable to show how (if at all) the lawyer's bevues undermined the fairness or reliability of the trial's result.8  ____________________ 8At any rate, this is not the case in which to push the envelope. Even if one were to accept the expansive view of Cronic exemplified by Swanson, 943 F.2d 1070, the record here ______ _______ simply does not justify a finding of a complete failure to subject the prosecution's case to meaningful adversarial testing. Indeed, in the unpublished rescript accompanying its summary affirmance of Scarpa's conviction, the Massachusetts Appeals Court did not even find Attorney Tacelli's conduct to be "manifestly unreasonable." See Commonwealth v. Scarpa, No. 90-P- ___ ____________ ______ 694, at 2 (Mass. App. Ct. Mar. 7, 1991). While we do not necessarily agree with this evaluation, see supra Part III(C), we ___ _____ recognize that whatever his failings, Attorney Tacelli strove to impress the jury with the gravity of the prosecution's burden. For example, he focused in his summation on "the obligation of the Government to prove their [sic] case beyond a reasonable doubt"; reminded the jurors that, in deciding the case, they must "have an abiding conviction"; and told them that they could "choose to believe everything a witness says, disbelieve it, [or] believe half of it." Although Attorney Tacelli weakened his presentation by his later remarks, quoted ante, he still left it ____ up to the jury to decide the ultimate question of Scarpa's guilt. Hence, we do not find in this record such a deliberate rolling over as might warrant a finding of an absolute breakdown of the 30 To summarize, we hold that Strickland controls __________ inquiries concerning counsel's actual performance at trial, and that substandard performance, in the nature of particular attorney errors, cannot conclusively be presumed to have been prejudicial. Silhouetted against this backdrop, we consider it supremely important that Attorney Tacelli's blunders cannot be judged solely by the "surrounding circumstances" of the representation, but, rather, must be judged in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law. We conclude that this characterization places the case beyond Cronic's reach. ______ Put bluntly, because Attorney Tacelli's errors are more an example of maladroit performance than of non-performance, Strickland necessitates an inquiry into the existence of actual __________ prejudice. 2. 2. Since the district court presumed prejudice, it made no explicit findings on the second prong of the Strickland test. We __________ have considered the advisability of remanding for this purpose, but we conclude that it is unnecessary to do so. The origins of the case date back to 1987; the parties have briefed and argued the issue of actual prejudice; and the record is sufficient to permit us to perform the decisionmaking task. Moreover, all the evidence was taken in the state courts; thus, we are in as good a position as the federal district judge to probe the matter. And,  ____________________ adversarial process. 31 finally, even if a finding were made below, we would be obliged to exercise de novo review, see supra p. 13. This combination of __ ____ ___ _____ factors persuades us to undertake the inquiry into actual prejudice. A convicted defendant can establish the requisite prejudice in an ineffective assistance case by demonstrating a reasonable probability that, but for counsel's bevues, the trial outcome would have been different. For this purpose, a reasonable probability is defined as that which undermines confidence in the result of the proceeding. See Strickland, 466 ___ __________ U.S. at 694; see also Kotteakos v. United States, 328 U.S. 750, ___ ____ _________ _____________ 764 (1946). We caution however, that the analysis does not focus solely on outcome determination, but also takes into prominent consideration "whether the result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 113 ________ ________ S. Ct. 838, 842 (1993). This question must be answered without reference to certain extraneous factors, such as "the possibility of arbitrariness, whimsy, caprice, `nullification,' and the like," which do not legitimately enter the jury's deliberations. Strickland, 466 U.S. at 695. With these omissions, our analysis __________ proceeds "on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." Id. ___ Despite Attorney Tacelli's ineptitude, we discern no actual prejudice here. The government presented clear, uncontroverted eyewitness testimony from an agent who 32 participated in both drug-trafficking transactions and who had conducted more than 30 undercover operations during his career. Eight other law officers assisted agent Desmond and stood ready to testify in a substantially similar fashion if the need arose. The risk of prejudice from Attorney Tacelli's ill-advised request that the jury credit the government's witness was minimized by the one-sidedness of the evidence; here, there was no contradictory version of the critical events that a skeptical jury otherwise might have chosen to believe. Similarly, any facts tacitly conceded during Attorney Tacelli's misconceived "conduit" argument were overwhelmingly supported by the proof; as we have mentioned, the record contains not one scintilla of exculpatory evidence. To this day, petitioner has failed to identify any promising line of defense or to construct a plausible scenario that, if exploited, might have given the jury pause. We agree with the district court's observation that, on this record, it is difficult to imagine any rational jury failing to convict. Because there is neither a reasonable probability that the outcome of the trial would have differed if counsel had been more adept nor any solid basis for believing that the trial was fundamentally unfair or unreliable, no Sixth Amendment violation inheres. IV. CONCLUSION IV. CONCLUSION We need go no further. Petitioner's habeas claim is ripe for review, but, upon due consideration, the claim fails. 33 Hence, the judgment below must be reversed and the case remanded to the district court for the entry of an appropriate order clearing the way for the Commonwealth to resume custody of petitioner. Reversed and remanded. Reversed and remanded. _____________________ 34