USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1036 UNITED STATES, Appellee, v. KEVIN WHIFFEN, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Cyr, Senior Circuit Judge, and Boudin, Circuit Judge. _____________________ Bjorn Lange, Assistant Federal Defender, for appellant. Jean  B.  Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, and Peter E. Papps, First Assistant United States Attorney, were on brief for appellee. ____________________ August 29, 1997 ____________________ TORRUELLA, Chief Judge. Defendant-appellant Kevin Whiffen ("Whiffen") was tried and convicted on four counts of transmitting threatening communications in interstate commerce in violation of 18 U.S.C. S 875(c). Whiffen now appeals, arguing that the indictment failed to allege an offense, that the court should have granted his motion under Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal on all counts, and that the court erred in its jury instructions. We affirm. I. Background In 1993, Whiffen, a resident of New Hampshire, was driving a car that was involved in a two-vehicle accident in Rhode Island. The other car was insured by Allstate Insurance ("Allstate"). Allstate paid a claim to its insured and sought reimbursement from Whiffen in the amount of approximately $11,000. The claim was eventually turned over to Universal Fidelity Corporation ("UFC"), located in Florida, for collection. On October 11, 1995, UFC sent a letter to Whiffen, informing him that the New Hampshire Division of Motor Vehicles had been notified of his failure to pay and warning that if he failed to pay the claim within thirty days, he risked losing his license. On October 17, 1995, Whiffen returned a telephone call from Kelly Terrell ("Terrell"), a UFC collector. During the call, Whiffen was "very belligerent," and when Terrell stated that she could have Whiffen's license suspended, Whiffen said that "the building will go boom." At that point, Terrell disconnected the line. -2- Several minutes later, Whiffen called back. The call was transferred to Terrell, and Whiffen told her that "the building will go boom." Whiffen called back a third time, speaking on this occasion with Anna Walls ("Walls") of UFC. He asked that a message be relayed to Terrell that "buildings go boom boom." On the evening of October 17, 1995, Walls' supervisor, Mark Gallo ("Gallo"), called Whiffen to confirm the name of his attorney and to ask him to pay his bill. Gallo asked Whiffen if he intended to drive to Florida and blow up the building. Whiffen responded that he had friends in Florida who would "take care of it for him." As a result of Whiffen's statements, UFC closed their file on Whiffen and returned the account to Allstate. On October 29, 1995, Whiffen telephoned Allstate's Bedford, New Hampshire office. The call was automatically transferred to Sheryl Johnson, a manager at Allstate's St. Petersburg, Florida office. Whiffen told her that "Allstate had better stop messing with me or else I'm going to blow up their building." II. The Requisite Intent Although Whiffen makes several claims on appeal, all of them turn on the question of whether the threats made by Whiffen constitute threats to the person of another. In order to resolve this question, we must determine the intent necessary for conviction under section 875. -3- The centerpiece of Whiffen's appeal is the claim that 18 U.S.C. S 875(c) is a specific intent crime. In other words, in order to obtain a conviction, the government must prove that the defendant intended his communication to be received as a threat. In support of this view, Whiffen cites  United States v.  Twine, 853 F.2d 676 (9th Cir. 1988). In Twine, the Ninth Circuit concluded that "the showing of an intent to threaten, required by S 875(c) . . . is a showing of specific intent." Id. at 680. Other circuits, however, disagree with  Twine. In United States v.  DeAndino, 958 F.2d 146 (6th Cir. 1992), for example, the Sixth Circuit concluded that "S 875(c) does not require specific intent in regard to the threat element of the offense, but only general intent." Id. at 150. Under a general intent standard, whether a communication is a "true threat" is determined objectively from all the surrounding facts and circumstances, rather than from the defendant's subjective purpose. A general intent standard has also been adopted by three other circuits.  See United  States v. Myers, 104 F.3d 76, 81 (5th Cir. 1997), United States v. Himelwright, 42 F.2d 777, 782-83 (3d Cir. 1994), United States v. Darby, 37 F.3d 1059, 1063-66 (4th Cir. 1994), cert. denied, 514 U.S. 1097 (1995). The test espoused in these cases is stated in Darby:  Even within the Ninth Circuit there is some question about the continuing validity of Twine. See United  States v. King, 920 F. Supp. 1978, 1079-80 (C.D. Cal. 1996) (suggesting that Twine conflicts with both prior and subsequent Ninth Circuit precedent). -4- [T]o establish a violation of section 875(c), the government must establish that the defendant intended to transmit the interstate communication and that the communication contained a true threat. Whether a communication in fact contains a true threat is determined by the interpretation of a reasonable recipient familiar with the context of the communication. The government does not have to prove that the defendant subjectively intended for this recipient to understand the communication as a threat. Darby, 37 F.3d at 1066. Our sister circuits have also considered what constitutes a "true threat" under other federal threat statutes. See United  States v. Fulmer, 108 F.3d 1486, 1491 (1st Cir. 1997) (collecting cases). Although the intent requirement of section 875(c) has not previously been decided by this court, we recently had occasion to determine the requisite intent under a different threat statute, 18 U.S.C. S 115(a)(1)(B), which criminalizes threats directed at federal agents. In determining what constitutes a "true threat," the Fulmer panel found the governing standard to be "whether [the defendant] should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made." Fulmer, 108 F.3d at 1491. This test takes into consideration the context in which the remark was made and avoids the risk that an otherwise innocuous statement might become a threat if directed at an unusually sensitive listener. This approach also protects listeners from statements that are reasonably interpreted as threats, even if the speaker lacks the subjective, specific intent -5- to threaten, or, as would be more common, the government is unable to prove such specific intent which, by its nature, is difficult to demonstrate.  For these reasons, we believe that the logic of Fulmer, which considered 18 U.S.C. S 115(a)(1)(B), applies with full force to 18 U.S.C. S 875, and we adopt the same standard for the latter statute. In doing so, we are also aligning ourselves with the majority view of our sister circuits, as discussed supra. Having established that section 875(c) requires only a general intent, we are able to engage each of Whiffen's specific claims. III. Failure to Allege an Offense Whiffen's first claim of error relates to his pre-trial motion, under Rule 12(b)(2) of the Federal Rules of Criminal Procedure, to dismiss the indictment for failure to allege an offense. Whiffen was charged with violation of 18 U.S.C. S 875(c) which prohibits the transmission in interstate commerce of "any threat to injure the person of another." The indictment alleges that Whiffen made such a communication when he stated that "[y]our building will go boom"; "the building will go boom"; "buildings go boom"; and "Allstate had better stop messing with me or else I'm going to blow up their building." On appeal, Whiffen argues that his motion to dismiss should have been granted on the grounds that the indictment "fails to allege 'unequivocal, unconditional and specific expressions of intention immediately to inflict injury' to another person." Brief -6- of Appellant at 7 (quoting  United States v.  Kelner, 534 F.2d 1020, 1027 (2d Cir. 1976)). Having determined that specific intent is not the standard under which Whiffen's statements should be judged, it is clear that the failure to allege specific intent is not grounds for dismissal. "[A]n indictment is sufficiently particular if it elucidates the elements of a crime, enlightens a defendant as to the nature of the charges against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions for the same offense." United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993);  see also Fed. R. Crim. P. 7(c)(1). Although the four counts contain slightly different wording, we present only Count I, which is representative of the other counts. Count I states that: On or about October 17, 1995, in the District of New Hampshire, the defendant, Kevin Whiffen knowingly and willfully transmitted in interstate commerce between Farmington, New Hampshire and Tampa, Florida, a communication containing a threat to injure Kelly Terrell and other employees of Universal Fidelity Corporation, Tampa, Florida, to wit, "Your building will go boom." All in violation of Title 18, United States Code, Section 875(c). It is our view that the indictment states the offense for which Whiffen has been convicted. The elements of the crime are elucidated and the indictment is sufficient to plead double jeopardy should future prosecutions be brought against Whiffen for the same offense. The indictment basically tracks the language of section 875(c), which states: "Whoever transmits in interstate or -7- foreign commerce any communication containing . . . any threat to injure the person of another, shall be fined under this title and imprisoned for not more than five years, or both." 18 U.S.C. S 875(c). We find the indictment to be sufficient. See  Darby, 37 F.3d at 1063. Appellant also argues that the indictment is inadequate because it "alleges threats that a building or buildings would 'go boom.' . . . It does not allege that any person would be present or hurt by any such explosion." Brief of Appellant at 6. The indictment does, however, allege that each of the threats was a threat to injure the person of another. In Count I, for example, it is stated that the communication contained "a threat to injure Kelly Terrell and other employees of Universal Fidelity Corporation." Whiffen's argument appears to be that threats to blow up the building are, as a matter of law, not threats against a person. Like the district court, we are unwilling to conclude that his words did not contain a threat to injure a person. One possible interpretation of a threat to blow up a building is that the building will be blown up with people inside. Such an interpretation would lead to the conclusion that the threat was a threat against those who work in the building. Alternatively, such a threat may be interpreted as a threat to blow up the building only when it is empty. Under this interpretation, Whiffen's statement would not constitute a threat against a person. The proper interpretation of Whiffen's remarks, however, is a question of fact and, therefore, appropriately left for the jury. We cannot -8- conclude that the interpretation preferred by Whiffen is, as a matter of law, the correct one. Whiffen argues that we must interpret section 875(c) narrowly in order to avoid violation of his First Amendment rights. In support, he cites Watts v. United States, 394 U.S. 705 (1969), in which the defendant was accused of threatening the President. The primary concern of the Court in Watts was the protection of constitutionally protected political speech. See id. at 706-08. Whiffen does not claim that his statements were a form of political speech. In any event, a true threat is not protected by the First Amendment. See Fulmer, 108 F.3d at 1492-93; United  States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir. 1990). For this reason, a conviction upon a finding that the statements were true threats would not violate Whiffen's constitutionally protected right to speech. IV. Judgment of Acquittal Whiffen also appeals the denial of his motion, under Rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal on all counts. We review the district court's ruling deferentially, considering the evidence "in the light most compatible with the verdict, resolv[ing] all credibility disputes in the verdict's favor, and then reach[ing] a judgment about whether a rational jury could find guilt beyond a reasonable doubt." United States v.  Taylor, 54 F.3d 967, 974 (1st Cir. 1995). -9- Whiffen claims that even under this deferential standard, the evidence "failed to prove a true threat to injure 'the person of another.'" Brief of Appellant at 8. This argument is, ultimately, a claim that the words spoken -- on which there is no dispute -- did not constitute a true threat. Specifically, Whiffen argues that "any reasonable person familiar with the context of those statements could not find beyond a reasonable doubt that they were true threats under S 875(c). They were frustrated, inarticulate, and empty words." Brief of Appellant at 10. There is no dispute that Whiffen made the statements, there is disagreement only with respect to their proper interpretation. Whether or not Whiffen's statements were true threats is determined by applying the  Fulmer test discussed above. At trial, the government presented testimony that Terrell notified two supervisors about Whiffen's call, and informed Stacie Thompson, the person responsible for incoming mail, to "be very careful with any packages coming in from this area because there was a bomb threat." Tr., April 9, 1996, at 41. Both Terrell and Walls testified that this was the only bomb threat they had ever received while working in claims collection. Walls, who has fifteen years experience in third party collections, testified that by Whiffen's third call she was afraid. Joseph Suozzo, a claim manager in Allstate's Bedford, New Hampshire office, testified that, in reaction to the phone calls from Whiffen, a security guard was hired for the Bedford office and the claim against Whiffen was not pursued. This evidence regarding the reaction of the listeners is -10- not conclusive, but it does suggest that at least these individuals perceived the statements to be threats. Faced with this evidence, as well as the content of the statements and other contextual information, a reasonable jury could have found that the defendant should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it was made. For that reason, we affirm the denial of Whiffen's motion for judgments of acquittal on all counts. With respect to count four, Whiffen argues that he was unaware that his in-state call was re-routed to Florida. His lack of knowledge, however, does not constitute a defense. "[W]hile the Government was required to prove that [the defendant]'s phone call crossed a state line (a fact not in dispute here), the Government did not need to prove that [the defendant] knew of the interstate nexus." Darby, 37 F.3d at 1067. V. Jury Instructions Finally, Whiffen challenges the jury instructions. He claims error in the district court's failure to instruct the jury that violation of section 875(c) is a specific intent crime. In our discussion of this issue,  supra section II, we determined that section 875(c) is a general intent crime. The failure to provide instructions to the effect that it is a specific intent crime, therefore, cannot be error. Whiffen makes the additional argument that the jury instructions failed to meet the requirements of Fulmer. We turn, therefore, to consider whether the requirements set forth in that -11- opinion, which we have determined apply in this case, were satisfied by the district court. Fulmer instructs that "the appropriate standard under which a defendant may be convicted for making a threat is whether he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made." Fulmer, 108 F.3d at 1491. The jury instructions actually given in the instant case were: To sustain its burden with regard to the second element the government must prove beyond a reasonable doubt that the communication contained a threat. A threat is a serious statement or communication expressing an intention to inflict bodily injury upon another person which, under the surrounding circumstances, and in context, would cause apprehension in a reasonable person that the person making the threat will act on it. A criminal threat must be distinguished from words used as mere idle or careless talk, hyperbole, exaggeration, or something said in a joking manner. Those are not threats within the meaning of the statute involved in this case. In other words, the communication must be unconditional and a true threat or one properly perceived by a reasonable person as a real or genuine threat to injure another. The government has the burden of proving beyond a reasonable doubt that an ordinary reasonable person, familiar with the context and circumstances surrounding the communication, would interpret the communication as a genuine threat to injure another person. . . . The government is not required to prove that the defendant subjectively intended the recipient to understand the communication was a threat, nor need to prove that the defendant intended to or was actually able to carry out the threat made. [T]he -12- government must prove that the threat was an unequivocal and unconditional expression of intent to cause bodily injury to another person and would cause a reasonable person in the recipient's circumstances to fear that he, she or another person faced an imminent risk of bodily injury. Tr. 9/5/96, at 14-15. Comparing the instructions given to those required under the Fulmer analysis, we see that the district court instructions failed to inform the jury that it must consider whether the defendant could reasonably have foreseen that the statement would be taken as a threat. The instructions given indicate that it is sufficient if the communication would cause apprehension in a reasonable listener. In light of Fulmer, this focus on the recipient of the threat rather than the defendant could be viewed as error, although we note in fairness to the district court that Fulmer was decided some months after the trial in this case. In any event, in this case, as in many others, the distinction is without practical importance. We do not reverse a conviction based on an error in the jury instructions if "it is highly probable that the error did not contribute to the verdict." United States v.  Cudlitz, 72 F.3d 992, 999 (1st Cir. 1996). An error that is certain to have had no significant impact on the jury is harmless. The facts of this case are such that the instructions required under Fulmer and the instructions actually given in this case are functionally equivalent. In certain situations, as in Fulmer, there may be information known to the listener, but not to -13- the speaker (or vice versa), that would cause a reasonable listener to perceive a statement as an expression of an intent to injure despite the fact that a reasonable speaker would not view it as such. That is not the case here. It is not possible that the words spoken by Whiffen were reasonably understood by the employees of UFC and Allstate as an expression of an intent to injure, and yet such an outcome would not have been foreseen by a reasonable speaker in Whiffen's position. This is so because, unlike in Fulmer, Whiffen did not employ language that held a different meaning for him than it did for the listeners. We conclude, therefore, that the imperfection in the jury instructions could not have affected the verdict. The error was harmless. VI. Conclusion For the reasons stated herein, we  affirm  the judgment of the district court. -14-