Stetson v. Parole Board, NHSP        CV-96-186-B    05/27/98

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**James T. Stetson**

    v.                                    Civil No. 96-186-B

**Parole Board, NHSP**[1]


**MEMORANDUM AND ORDER**


    James Stetson was convicted of manslaughter in the shooting death of Sherry Bubelynk.  He has filed a habeas corpus petition in this court claiming that trial counsel was ineffective. Although he cites eleven different areas in which counsel's performance allegedly was deficient, his primary arguments are that counsel was ineffective because he failed to: (1) conduct an adequate pretrial investigation; (2) file a motion to suppress certain statements Stetson made to the police; and (3) request a jury instruction on the lesser included offense of negligent homicide.  For the reasons that follow, I reject Stetson's arguments and dismiss his petition.

---

[1]  Stetson brought his claim against the Commissioner of Corrections.  Because he has been released on parole, however, the correct respondent is the New Hampshire Parole Board.

## I.    BACKGROUND

### A.    The Shooting and the Trial[2]

Around 1:50 a.m. on the morning of June 24, 1989, the petitioner drove his pickup truck to an alley behind 340 Cedar Street in Manchester, New Hampshire.  Intoxicated at the time, the petitioner drove erratically.  Upon his arrival, an argument ensued between the petitioner and Wayne Owens, a resident of 340 Cedar Street.  The petitioner began to drive out of the alley, then stopped, reversed a short distance, extended his arm out of the driver's window and, while pointing it at an upward angle, fired a single shot from a .22 semi-automatic pistol and yelled to Owens, "the next one is for you."  The bullet ricocheted off an asphalt shingle and struck the victim, Sherry Bubelynk, in the chest, mortally wounding her.

When the police arrived on the scene, they learned the shot originated from the alley.  The next morning, the police recovered a spent .22 caliber shell casing from the alley.  The police also located two eyewitnesses, Dennis Citro and Marie Thompkins.[3]  Both eyewitnesses identified the petitioner and his

---

[2]  I have taken the statement of facts concerning the shooting and the trial from Superior Court Judge James Barry's June 2, 1995 order denying Stetson's state court petition for habeas corpus.

[3]  Neither witness testified at trial.

vehicle. They placed the petitioner in the alley at the time of the shooting. Furthermore, Dennis Citro indicated he saw the petitioner fire the gun.

On June 25, the police stopped the petitioner and interviewed him at the police station for about one hour. During the interview, the petitioner admitted he was in the alley on the night of the shooting but denied owning a gun. The petitioner later called the police station and asked if he was going to be arrested. When he was told arrest was likely, the petitioner asked, "what am I going to get for this, 30 years?"

Prior to his arrest, the petitioner made numerous incriminating statements. On June 26, 1990, the petitioner informed Mark LeBlanc that he had killed somebody. On June 28, 1990, the petitioner threatened Mark French, stating "I killed Sherry and I am going to get you." On the same day, the petitioner informed Donna Boulanger that "he was the sniper that everyone is looking for." He also told Robert Harlow he discharged a firearm in the alley on the night of the shooting. Finally, the police located two additional eyewitnesses, Vincent and Holly Jubrey.

The petitioner was indicted for manslaughter in July 1989. The court appointed attorney Stephen White as defense counsel on

October 31, 1989, after the N.H. Public Defenders withdrew from the case.  A paralegal from Attorney White's office interviewed the petitioner in jail in November 1989.  During this interview, the petitioner informed the paralegal he had fired a weapon in the alley on the night of the shooting.

Attorney White met briefly with the petitioner on December 8, 1989 for a bail hearing, and communicated briefly with the petitioner by telephone.  The next face-to-face meeting between Attorney White and the petitioner occurred on April 3, 1990, approximately two weeks before trial.  The petitioner informed Attorney White that while he had fired a weapon in the alley, he had fired the weapon at 12:45 a.m., not 1:50 a.m., the time of the alleged shooting.

During the final weeks before trial, Attorney White deposed several of the state's witnesses and hired a private investigator.  When the petitioner informed Attorney White of the possible existence of an eyewitness who could testify someone other than petitioner was the shooter, Attorney White sent the investigator to Rhode Island to locate this witness.  The witness could not, however, provide useful testimony.  Attorney White did not file any motions to suppress or motions in limine and refused to file a continuance.

Attorney White also attempted to enter plea negotiations. The petitioner, apparently convinced of his own innocence, rejected an offer of five to ten years, and instructed Attorney White to discontinue future negotiations. During trial, the petitioner repeated this instruction and executed a written document memorializing this request.

During trial, Attorney White determined that allowing the petitioner to testify would result in the petitioner admitting both that he was in the alley on the night of the shooting and that he had fired a weapon. Being unable to locate a witness who could corroborate the petitioner's "two shot" theory and fearing such an admission on the part of the petitioner would likely lead to a conviction, Attorney White decided to pursue a strategy of attacking the credibility of the state's witnesses in order to introduce reasonable doubt into the minds of the jurors. At the close of the trial, Attorney White decided not to ask for a lesser included offense, as such a request would be inconsistent with his client's position. After five hours of deliberation, the jury returned a guilty verdict.

## B.    The State Court Habeas Corpus Proceeding

Stetson filed a state court petition for habeas corpus after unsuccessfully appealing his conviction. He based his petition

on the same claim that he raises in this action.

The state court held an evidentiary hearing on April 28, 1995 and subsequently issued a 12-page opinion denying the petition.  The New Hampshire Supreme Court refused to consider Stetson's request for review.

## II.  **STANDARD OF REVIEW**

A federal court's degree of deference when reviewing a habeas corpus request arising from state court proceedings varies depending on whether the review addresses questions of fact, law, or mixed questions of law and fact.[4]  A reviewing court presumes that state court findings of fact are correct unless one of eight statutory exceptions applies.[5]  Questions of law, on the other

---

[4]  Congress amended the habeas corpus statute when it enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA").  However, AEDPA does not apply in this case because Stetson filed his petition before the Act became effective.  See Lindh v. Murphy, 117 S. Ct. 2059, 2067-68 (1997).

[5]  To qualify for an exception to the rule presuming that state court findings of fact are correct, the petitioner must prove or the respondent must admit that: (1) the merits were not resolved by the state hearing; (2) the fact-finding procedure did not afford a sufficiently full and fair hearing; (3) the material facts were not adequately developed; (4) the state lacked jurisdiction over the subject matter or the petitioner; (5) the applicant was indigent and the state failed to provide counsel at the hearing; (6) the applicant did not receive a full and fair hearing; (7) the applicant's due process was in some other way abridged at the hearing; or (8) the record does not support the

hand, receive *de novo* review.  See Wright v. West, 505 U.S. 277, 289-90 & n. 6 (1992); Sumner v. Mata, 455 U.S. 591, 597 (1982). In the First Circuit, mixed questions of law and fact, such as whether trial counsel rendered effective assistance, are also reviewed *de novo*.  See Scarpa v. Dubois, 38 F.3d 1, 9 (1st Cir. 1994), cert. denied, 513 U.S. 1129 (1995).

Stetson is not entitled to an evidentiary hearing in federal court as he has demonstrated neither cause nor prejudice for his failure to develop an adequate record in state court.  See Keeney v. Tamayo-Reyes, 504 U.S. 1, 8-9 (1992).  Accordingly, I decide the case based on the expanded evidentiary record produced in state court and evaluate that record in light of the above-mentioned standard of review.

## III.  DISCUSSION

Stetson claims that his counsel was ineffective both before and during trial.  In order to succeed with such a claim, a habeas petitioner must make a two-part showing.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); Scarpa, 38 F.3d at 8; United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991),

state court factual findings.  See 28 U.S.C.A. § 2254(d) (West 1994).

-7-

cert. denied, 502 U.S. 1079 (1992).

First, the petitioner must establish that counsel's conduct was unreasonable under professional norms prevailing at the time of the conduct. See Strickland, 466 U.S. at 688-90; Scarpa, 38 F.3d at 8; Natanel, 938 F.2d at 309. This burden is difficult to meet because the constitutional right to counsel guarantees only that the trial will be a "reliable adversarial testing process;" it is not intended to ensure the defendant will be acquitted. See Strickland, 466 U.S. at 688 (quoting Powell v. Alabama, 287 U.S. 45, 68-69 (1932)). Thus, reviewing courts begin with the presumption, regarding counsel's action, "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). This presumption is warranted because "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction . . . and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citing Engle v. Isaac, 456 U.S. 107, 133-34 (1982)).

Second, petitioner must show that counsel's asserted deficiencies resulted in actual prejudice. See Strickland, 466

U.S. at 691-92; <u>Scarpa</u>, 38 F.3d at 8. In other words, petitioner must show that, but for counsel's conduct, the trial outcome would have been different. <u>See</u> <u>Strickland</u>, 466 U.S. at 694; <u>Scarpa</u>, 38 F.3d at 8-9. I consider Stetson's claim in light of these requirements.

## A. <u>Failure to Investigate and Prepare for Trial</u>

Stetson argues that his counsel failed to properly investigate the charges against him. In particular, he claims that his counsel failed to locate certain witnesses that would have been favorable to the defense. The state court found with respect to this claim that "counsel made reasonable attempts to locate any favorable witnesses. . . . Counsel indicated that he would communicate with any person whom the petitioner felt could give favorable testimony and counsel hired a private investigator to locate possible defense witnesses. These attempts proved fruitless as the witnesses either could not provide the needed information and [sic] placed the petitioner in the alley at the time of the shooting." Nothing in the record casts doubt on these findings. Nor does the record otherwise suggest that counsel conducted an inadequate pretrial investigation. Accordingly, I reject Stetson's claim that his counsel was

ineffective because he failed to conduct an adequate pretrial investigation.

B.    **Failure to Suppress Stetson's Statements**

Stetson claims that his counsel should have moved to suppress statements given to the police during the June 25 interview. The state habeas judge found with respect to this claim that: (1) Stetson initially was stopped because he matched eyewitness descriptions; (2) Stetson was told before accompanying the police to the station that he was not under arrest and the decision about whether to come to the station was his; (3) the police did not threaten Stetson or otherwise engage in coercive conduct when questioning him; and (4) while there was some evidence in the record to suggest that Stetson had been drinking, he was not so intoxicated that he was incapable of answering the questions put to him. The record does not provide a basis for second-guessing the state court's factual findings on these issues. Moreover, reviewing the remaining questions *de novo*, I agree with the state habeas judge that any motion to suppress could not have been successful because the police had reasonable suspicion to stop Stetson, see United States v. McCarthy, 77 F.3d 522, 529 (1st Cir.). cert. denied, 117 S. Ct. 479 (1996); Stetson was not entitled to Miranda warnings when he made his statements

because he was not "in custody," see Thompson v. Keohane, 516 U.S. 99, 107 (1995); and Stetson's statements to the police were not involuntary, see United States v. Burns, 15 F.3d 211, 216 (1st Cir. 1994).

## C.  **Failure to Request a Lesser Included Offense Instruction**

Stetson argues that his lawyer was ineffective because he failed to request an instruction on the lesser included offense of negligent homicide.  Stetson's theory of defense was that he had not fired the shot that killed Bubelynk.  To support this defense, Stetson relied heavily on a statement that he had given to the police in which he denied that he had fired the fatal shot.  Defense counsel explained his decision not to request a lesser included offense instruction at the state habeas corpus hearing by stating "I deliberately intended to let his statement speak for itself -- well, let the officer testify what his statement was, that he denied having a gun and shooting a gun in the alley.  I did not feel I could he[sic] ask for a lesser included offense when I was creating the impression he was denying the event, having any involvement in it."  Transcript at 191-92.[6]  Under the circumstances presented in this case,

_____

[6]  At one point Attorney White appeared to suggest that it would have been unethical to request a lesser included offense instruction.  I disagree with this assertion.  Nevertheless, in a

-11-

counsel's tactical judgment was reasonable.  Therefore, his failure to seek a lesser included offense instruction will not support an ineffective assistance of counsel claim.  See Neal v. Acevedo, 114 F.3d 803, 806 (8th Cir. 1997); Kubat v. Thieret, 867 F.2d 351, 364-65 (7th Cir.), cert. denied, 493 U.S. 874 (1989).

## D.    Other Arguments

Stetson also argues that counsel was ineffective because he (1) failed to communicate meaningfully; (2) disclosed a ricochet theory to the prosecution; (3) failed to quash an allegedly defective indictment; (4) failed to object to improper prosecution arguments; (5) opened the door for inadmissable hearsay testimony; (6) failed to hire a defense reconstruction expert; (7) failed to object to the prosecution's expert; and (8) threatened to disclose privileged information.  I discuss each argument in turn below.

### 1.  Failure to communicate meaningfully

Stetson alleges that Attorney White was ineffective because he failed to communicate meaningfully with Stetson prior to

---

case such as this where a defendant claims he was not responsible for a shooting, the ultimate question as to whether it would have been better to request a lesser included offense instruction than to give the jury a choice only between acquittal and manslaughter plainly presents a matter of tactical judgment that ordinarily should not be questioned on habeas corpus review.

trial. However, Stetson cannot show how counsel's conduct prejudiced his trial. "The legal question of 'ineffective assistance' focuses, not on client expressions of satisfaction . . . but upon counsel's performance." United States v. Porter, 924 F.2d 395, 398 (1st Cir. 1991) (citing United States v. Cronic, 466 U.S. 648, 657 n.21 (1984)). If counsel's performance did not prejudice the defendant, then, regardless of defendant's satisfaction with the result, counsel's duty to meaningfully communicate is satisfied.

The record shows that Attorney White did communicate with Stetson prior to trial, though not extensively. White's paralegal interviewed Stetson and placed a report of the interview on file. Stetson and White exchanged numerous telephone calls and letters and had a meeting in April 1990 to discuss aspects of the case including pleas and avenues of defense. White then presented a coherent defense taking into account all the evidence. Because the defense was not blatantly deficient, Stetson cannot show prejudice. Thus, he does not satisfy the second requirement of the ineffective assistance of counsel test. Strickland, 466 U.S. at 687; Scarpa, 38 F.3d at 9.

  2. Counsel disclosed a ricochet theory to the prosecution

Prior to trial, Attorney White counsel requested a proximity

report from the prosecutor. This report apparently mapped the crime scene, indicating the locations of the victim, shooter, any objects around the scene, and the trajectory of the bullet. Stetson claims that by requesting the report, counsel informed the prosecutors of a theory of which they had previously been unaware; namely, that the bullet had glanced off something prior to striking and killing Bubelnyk.

The evidence in the record shows, however, that months prior to trial, particles of asphalt shingle had been found embedded in the lead bullet, and that the prosecutors had planned to use a ricochet theory since then. Because the prosecution already knew of the theory at the time of counsel's request, counsel could not have disclosed the theory and, thus, his actions did not prejudice the trial. Hence, this claim cannot satisfy the second requirement of an ineffective assistance of counsel claim. See Strickland, 466 U.S. at 687; Scarpa, 38 F.3d at 9.

3. Failure to quash allegedly defective indictment

Stetson asserts that the indictment charging him with manslaughter was defective and that his counsel should have attempted to have it quashed. The record indicates that Stetson is dissatisfied with the indictment's alleged lack of specificity.

Attorney White testified at the state habeas corpus hearing that he did not move to quash the indictment because he felt he lacked sufficient grounds to support such a request. I agree with his assessment. An indictment must only allege the offense with sufficient specificity to inform the defendant of the charges against him. See Fed. R. Crim. P. 7(c)(1) advisory committee's note; 28 U.S.C.A. § 2071 (West 1994); United States v. Whiffen, 121 F.3d 18, 21 (1st Cir. 1997). The indictment states: ". . . on the 24th day of June, 1989 at 1:50 a.m. . . . [James T. Stetson of Manchester] . . . did commit the offense of manslaughter . . . [by] recklessly causing the death of Sherry Bubelynk by shooting her in the chest with a handgun." This allegation informs Stetson that he is being charged with recklessly shooting Bubelnyk in the chest and thereby killing her. Thus, it provides all of the specific information to which he is entitled.

4. Failure to object to improper arguments

Stetson faults his counsel for not objecting to certain comments made by the prosecution during its closing. Again, Stetson fails to state in his petition which comments were impermissible, but a review of the record and counsel's testimony shows that counsel's conduct was reasonable. Counsel testified

-15-

that he failed to object to the prosecution's closing because he did not want to look foolish or impolite in the eyes of the jury. As a practical matter, none of the prosecutor's arguments were plainly improper and it was a reasonable tactical judgment for counsel to withhold objection so as not to highlight the objectionable material or potentially antagonize the jury.  In sum, failing to object to the prosecution's arguments under these circumstances is reasonable trial conduct.  See United States v. Garcia-Rosa, 876 F.2d 209, 232 (1st Cir. 1989), vacated on other grounds, 498 U.S. 954 (1990).

    5.  "Opening the door" for inadmissible hearsay testimony

    Stetson asserts that defense counsel unreasonably "opened the door" to inadmissible hearsay testimony.  In response to questioning from defense counsel, police officer John Jaskola testified about an interview that he had conducted with Wayne Owens, a potential prosecution witness, in which Owens claimed that he knew nothing about the shooting.  Owens later was called as a prosecution witness, but he refused to testify and was held in contempt.  The prosecution then called William Brennan, another police officer, who testified that Owens had admitted in a later statement given after his arrest that he had seen Stetson fire the shot that killed Bubelynk.  The New Hampshire Supreme

-16-

Court ultimately concluded that the trial judge had properly admitted the evidence because the defense had opened the door to its admission. State v. Stetson, 135 N.H. 267, 269 (1992).

Attorney White testified that he elicited Owen's first statement to attack Owens' credibility and to cast doubt on the state's case by suggesting that Owens' temporizing about his knowledge of the events of June 24, 1989, tended to implicate him in the crime. In addition, counsel felt the second statement was of negligible importance for two reasons: (1) it was made under conditions suggesting self-interest and therefore not very credible; and (2) it was only one of a number of similar statements implicating Stetson so that in itself, counsel felt, it would not greatly influence the jury. In balancing the two pieces of testimony, counsel believed that the useful effects of the first statement outweighed the detrimental effects of the second statement. This determination falls well within the purview of a trial lawyer's reasonable tactical judgment. See Argencourt v. United States, 78 F.3d 14, 17 (1st Cir. 1996); Lema v. United States, 987 F.2d 48, 55-56 (1st Cir. 1993). Because Stetson cannot refute the presumption of reasonableness, he has no basis for an ineffective assistance of counsel claim. See Strickland, 466 U.S. at 687; Scarpa, 38 F.3d at 9.

6.  Failure to obtain defense reconstruction expert

Stetson claims that his counsel unreasonably failed to retain a reconstruction expert to testify as to what happened to the bullet on the morning of June 24, 1989.  The record shows that counsel considered hiring an expert but decided not to because it would not add anything to the defense.  Counsel felt that the prosecution expert's calculations had a sufficient margin of error so that the jury could conclude that the bullet might have been fired from some location other than the proposed location of Stetson's truck.  Such a conclusion would qualify as reasonable doubt, counsel reasoned.  Toward this end, counsel even managed to get the prosecution's expert to admit on cross-examination that the fatal bullet may have been fired from inside 340 Elm Street, Mr. Owens' apartment, suggesting a "frame-up."  Once again, this was a legitimate tactical judgment that counsel could reasonably have made under the circumstances.

7.  Failure to object to prosecution's expert

Stetson claims that his trial counsel unreasonably failed to object to the State's reconstruction expert's testimony.  Counsel defended his decision at the habeas corpus hearing by claiming that the testimony was so inconclusive that its admission benefitted the defense.  Further, counsel reasoned that if the

expert's testimony were excluded, the jury would have based its decision on lay witness testimony, most of which implicated Stetson. Hence, counsel's judgment had a reasonable basis and reinforced his trial strategy.

8. Threatening to disclose privileged information

Stetson claims that White threatened to disclose privileged information to the judge during the sentencing hearing if he attempted to hire a new attorney for his sentencing hearing. Attorney White denies the charge. The state habeas court found that even if Stetson's claim were true, it would not entitle him to a new trial because he did not suffer any prejudice. I agree. The record reveals that defense counsel argued vigorously and effectively for a reduced sentence. Stetson has failed to explain how he was prejudiced as a result of counsel's alleged threat. Accordingly, this claim cannot serve as a basis for habeas corpus relief.

## V. CONCLUSION

I find that Attorney White's pretrial and trial conduct passes the Strickland test as to each claim made by petitioner. White followed reasonable practice in devising his strategy for trial, and adequately investigated the facts of the case in

-19-

preparation for the trial.  Despite Stetson's conviction, I find that he has failed the burden of proving ineffective assistance of counsel based on unreasonable attorney conduct which may have prejudiced the outcome of the trial.  Therefore, his habeas corpus petition is without merit.  For these reasons, I dismiss his petition.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

May 27, 1998

cc:  James Stetson, pro se
     Patrick Donovan, Esq.