USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1572

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CHARLES LEE,
 a/k/a CHARLES HEARD,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Richard G. Stearns, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 Miriam Conrad, Assistant Federal Defender, Federal Defender
Office, with whom Stephanie A. Jirard, Assistant Federal Defender,
was on brief for appellant.
 Diana K. Lloyd, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for the
United States.
 

December 14, 1999

 
 
 BOUDIN, Circuit Judge. This is an appeal by Charles Lee
from his sentence imposed after he pled guilty to being a felon in
possession of a firearm and ammunition. 18 U.S.C. 922(g)(1)
(1994). It presents a narrow, but difficult, issue under the
Sentencing Guidelines as to the meaning of the term "assault" in a
specific context. The facts are taken from the undisputed portions
of the presentence report, the testimony at the sentencing hearing,
and the district court's findings. See, e.g., United States v.
Voccola, 99 F.3d 37, 43 (1st Cir. 1996).
 On April 26, 1998, Sergeant Bulman of the Boston Police 
Department assisted in a traffic stop of a car in which Lee was a
passenger. Approaching the car, Bulman saw that Lee had a large
bulge in his shirt above his waist; thinking that Lee might be
armed, Bulman ordered Lee out of the car. Lee exited but then
sought to escape, striking both Bulman and another officer in the
chest as he attempted to get past them. Lee thrashed about as
three or four officers fought to subdue him and repeatedly reached
for his waist area; the officers screamed to each other that Lee
was reaching for his waist and they sought to grab his hands. 
After a minute or two, the officers handcuffed Lee and found a
loaded gun in his front waistband.
 After his indictment and plea of guilty to being a felon
in possession, Lee was sentenced on January 11, 1999. At
sentencing, the government sought a three-level upward adjustment
for Lee under U.S.S.G. 3A1.2(b). That subsection, designed to
protect an "Official Victim," provides for such an increase where
 during the course of the offense or immediate
 flight therefrom, the defendant . . . knowing 
 . . . that a person was a law enforcement . .
 . officer, assaulted such officer in a manner
 creating a substantial risk of serious bodily
 injury.

The district court found that the "pushing and shoving" did not
create a risk of serious bodily injury to a trained police officer
but that Lee's efforts to reach for his gun did create apprehension
and a substantial risk of such an injury.
 Accordingly, the court made the three level adjustment,
leading to a guideline range of 51 to 63 months. However, because
Lee was already subject to a related state sentence, the court
imposed a consecutive sentence of only 42 months. U.S.S.G. 
5G1.3. Lee now appeals from his sentence, challenging only the
three level adjustment. Since the government does not suggest
otherwise, we assume for present purposes that Lee's sentence might
have been lower if the three-level adjustment had not been made.
 The district court's factual findings, so far as they go,
cannot be impeached under the clearly erroneous standard that
applies to them. United States v. Freeman, 176 F.3d 575, 578 (1st
Cir. 1999). It is evident that Lee was reaching for his gun; apart
from what the officers saw him doing, he himself told one of the
officers later that he had been trying to get his gun in order to
throw it away. The officers' apprehension was obvious from their
shouts and from testimony by Bulman. And whatever Lee's purpose,
his efforts to seize his gun did create a substantial risk of
bodily injury, whether from accidental discharge or the threat of
fire from the police. See United States v. Weaver, 8 F.3d 1240,
1245-46 (7th Cir. 1993).
 There is thus no doubt that Lee's conduct satisfied most
of the requirements of the guideline, including "immediate flight,"
knowledge that the officers were police, and the creation of "a
substantial risk of serious bodily injury." But the district court
made no finding that Lee had a purpose to shoot at the officers
(his own hearsay statement was to the contrary) or to frighten them
(there is no evidence on the point). The question, then, is
whether the "assault" requirement of the adjustment is satisfied in
this case, the principal doubt revolving around the scienter
requirement for assault. 
 The district court believed that the term "assault" in
the guideline should be read as a reference to common law criminal
assault. While the drafters may not have had this precise question
in mind, we think that generally speaking this is the right
construction; "assault" is a standard common law concept and no
other definition has been adopted by the guideline or commentary,
either explicitly or by cross-reference. Two possibilities should
nevertheless be mentioned.
 First, there is a federal statute that includes as a
federal crime "assault" on a federal officer. But the statute more
broadly encompasses the actions of anyone who "forcibly assaults,
resists, opposes, impedes, intimidates, or interferes with"
specified federal officers. 18 U.S.C. 111(a)(1) (1994). And the
statute itself does not define the term "assault," nor is it clear
that the case law interpreting the statute construes the term in
any way that would assist us in resolving the matter before us.
 Second, a somewhat stronger case could be made for
looking instead to U.S.S.G. 2A2.2, which defines in some detail
the concept of aggravated assault for purposes of prescribing the
offense level for the most serious of the various assaults covered
by federal statutes. The argument for looking to this definition
is that U.S.S.G. 3A1.2(b), with which we are primarily concerned,
says in the commentary that the guideline applies "in circumstances
tantamount to aggravated assault." U.S.S.G. 3A1.2, comment.
(n.5). But it turns out that the aggravated assault concept is
slightly different and would not in any event resolve the problem
before us.
 Aggravated assault is defined as a "felonious assault"
that involves either (a) use of a dangerous weapon with intent to
do bodily harm, or (b) serious bodily injury, or (c) an intent to
commit another felony. U.S.S.G. 2A2.2, comment. (n.1). Lee
urges the use of this definition in interpreting the guideline at
issue here because he falls outside of the first two categories,
forgetting that he may qualify under the third. Even so, the
question remains whether his conduct was "felonious assault" at
all, and on this issue--here, primarily turning on the scienter
required for assault--the aggravated assault guideline and its
commentary provide no answer.
 That guideline is probably of most help in illuminating
the separate requirement in 3A1.2(b) that the assault create "a
substantial risk of serious bodily injury"; conduct of the (a) and
(b) types would usually satisfy the risk-of-harm requirement
(although the (c) category conduct does not correspond to anything
in our own guideline). That may be all the commentary means in
saying that the conduct triggering the three level adjustment is
"tantamount" to aggravated assault. In all events, "tantamount"
does not mean "identical"; and in this case Lee's conduct clearly
presents the necessary risk of harm.
 This brings us back to the question whether Lee's conduct 
did constitute "assault" as measured by common law standards. 
Surprisingly, the answer is far from clear. Common law assault
embraces two different crimes: one is attempted battery, that is,
an intended effort to cause bodily harm to another which falls
short of success (an example would be striking at a police officer
but missing), regardless of whether the intended victim knows of
the attempt. 2 LaFave & Scott, Substantive Criminal Law 7.16(a),
at 313-14 (1986). Here, the district court made no finding that
Lee intended to shoot the police officers; and it is not clear that
the evidence would readily lend itself to such a finding unless the
judge discredited Lee's own statement as to his intent.
 The other branch of assault is an act which is intended
to, and reasonably does, cause the victim to fear immediate bodily
harm; such "menacing" constitutes assault even if no physical harm
is attempted, achieved, or intended. 2 LaFave & Scott, supra, 
7.16(b), at 315-17. An example would be a bank robber pointing a
gun at a teller. Here, Bulman testified that Lee's efforts to free
his gun did cause Bulman fear--quite reasonably so, in our view--
and the district judge so found. Less certain is what is required
as to Lee's "intent" to cause fear--and how the facts and evidence
as to his intent stack up against that requirement.
 Unfortunately, the scienter requirement for common law
assault is blurred by confusion and contradiction. For both
branches of assault (and the authorities often do not distinguish),
the most common formulation--that "intent" is required--relies on
a term notoriously unclear in distinguishing between "purpose" to
cause a result and mere "knowledge" of ordinary consequences. See
Model Penal Code 2.02(2) & comment 2, at 233-36 (1985). These
two notions correspond, at least roughly, to what common law judges
called specific and general intent, see United States v. Bailey,
444 U.S. 394, 405 (1980), and some of the cases and commentaries on
assault use these terms (or more modern counterparts). But the
cases and commentaries conflict as to which is required for
assault.
 This is not altogether surprising. In the kind of
 assault by menace case likely to be prosecuted, the defendant
 usually (1) does have a purpose to cause fear or (2) is so aware
 that his actions will cause fear--and is otherwise so blameworthy-
 -that no one much troubles about his lack of purpose. The perfect
 example of this blurring of specific and general intent is the
 criminal who flees in a car and drives straight at a police
 officer standing in his way; it is normally hard to tell whether
 the criminal had a purpose to scare the officer or merely an
 indifferent awareness of the threat, incidental to an overriding
 aim to escape.
 What is telling is that in several such cases (obviously
 the facts vary from cases to case) courts have imposed the three-
 level assault adjustment we are considering, while in several
 others the courts have applied only a two-level adjustment for
 reckless endangerment during flight, U.S.S.G. 3C1.2; often this
 choice has been made without much attention to the common law
 technicalities of assault or even an awareness of the issue. 
 Thus, while we still think that the common law definition of
 assault should generally govern the guideline whenever it supplies
 an answer, that definition does not clearly resolve the question
 what degree of scienter is required here: awareness of
 consequences or something more purposeful.
 In the end, we think that the policy of this guideline--
 to protect official victims--embraces the case where an escaping
 criminal drives straight at a police officer, knowing him to be
 there, regardless of whether the criminal desires to hit him; so
 long as the criminal has ample reason to know that fear will be
 caused, the lack of purpose to cause fear should not matter. At
 least one case in this circuit may implicitly take this view, see
 Garcia, 34 F.3d at 12-13; others are consistent; and at least some
 judges who applied the reckless endangerment adjustment were
 apparently not asked to consider the assault adjustment. See note
 3 above. 
 Even if mere knowledge of consequences is enough, and we
 hold that it is for this guideline adjustment, this does not quite
 resolve our case. One might argue that Lee's effort to draw his
 gun while struggling with the police does not entail, or at least
 necessarily entail, his awareness that his conduct was practically
 certain to alarm the officers. But here Lee knew that the police
 were shouting about his efforts to reach his gun and trying to
 stop him. While awareness is perhaps a matter of degree, this
 "feedback" from the "official victims" during the assault itself
 takes the case pretty far up the scale and justifies the
 adjustment.
 Two further comments are in order. The first is that the
 line between assault under this guideline and reckless
 endangerment under section 3C1.2 is often going to be a matter of
 degree. Provided that there is no clear error of law, we are
 very likely to sustain the choice of the district judge, who has
 the best feel for the factual subtleties involved. The choice is
 not all that different from distinguishing between a minor and a
 minimal participant. U.S.S.G. 3B1.2; United States v. Gonzalez-
 Soberal, 109 F.3d 64, 73 (1st Cir. 1997).
 The other, implicit in what has already been said, is
 that at best Lee could have gotten no more than a one level
 downward adjustment out of this appeal; if the assault adjustment
 did not apply in this case, the reckless endangerment guideline
 certainly would. This would have reduced his guideline range from
 51-63 months to 46-57 months; as noted, his federal sentence was
 in fact 42 months. In other words, it is at least possible that
 victory in this very well argued appeal would not have made any
 difference to Lee's sentence.
 Affirmed.